**UNITED STATES v. BUSY BEE TRANS-FER & STORAGE CO., Inc.**

No. 15791–Cr.

District Court, W. D. Missouri, W. D.

May 13, 1944.

Maurice M. Milligan, U. S. Atty., and Earl A. Grimes, Asst. U. S. Atty., both of Kansas City, Mo., for plaintiff.

R. H. Scott, of Dallas, Texas, for defendant.

REEVES, District Judge.

The defendant, upon a plea of not guilty, was tried on seventeen counts of an information charging violations of the Interstate Commerce Act. Fourteen counts accused the defendant of exacting unlawful tariffs and the last three counts charged the defendant with failing to show required information on its freight and expense bills.

The defendant filed an answer to the charges. By this answer and by stipula-

694

tion it admitted the averments of the information but asserted that, under an order of the Interstate Commerce Commission followed by an order of the Defense Transportation Director, its charges were justified on the ground of emergencies as outlined by both of said orders.

Supplemental facts will be stated in the course of this memorandum opinion.

1. By Section 317, Title 49 U.S.C.A., relating to the subject of Transportation, "(a) * * * Every common carrier by motor vehicle" is required to file with the Interstate Commerce Commission, "and print, and keep open to public inspection, tariffs showing all the rates, fares, and charges for transportation, and all services in connection therewith * * *."

Such tariffs, when posted and filed, have the force and effect of law and any violation of such tariffs subjects the carrier to punishment as provided in Section 322, Title 49 U.S.C.A. Subsection (a) of said section contains a recital that:

"Any person knowingly and willfully violating any provision of this chapter, or any rule, regulation, requirement, or order thereunder, or any term or condition of any certificate, permit, or license, for which a penalty is not otherwise herein provided, shall, upon conviction thereof, be fined * * *." There is further provision for an increase of the penalty "for any subsequent offense."

It is alleged and substantially admitted that the defendant has heretofore violated the same statute and was penalized therefor.

The defendant, by its answer and upon its evidence, seeks to justify its violation of its tariffs and its failure to furnish information required by regulation because of effort to conform to the emergency orders issued both by the Interstate Commerce Commission and by the Defense Transportation Director. Such orders should be discussed.

2. On June 8, 1942, the Interstate Commerce Commission entered what was designated as Emergency Order M-1. A preliminary statement with respect to the order is indicative of its purpose. Such preliminary statement is in the nature of a heading. Pertinent portions are as follows:

"Emergency Diversion of Freight by Common Carriers by Motor Vehicle to Other Such Carriers."

The Commission said that it had under consideration "operating conditions of common carriers of property by motor vehicle and the *subject of rerouting of traffic in connection with such carriers.*"

There was a further recital that:

"It appearing, That there exists an urgent need to conserve the transportation facilities of the nation and to expedite the transportation and delivery of war materials and other freight. for the purpose of successfully prosecuting the war,

"And it further appearing, That these purposes will be materially served, and the public interest will be promoted, by the interchange of traffic between all such common carriers without regard to the routing thereof made by shippers or carriers, therefore:

"It is ordered, etc."

The Interstate Commerce Commission then undertook to hypothesize all conceivable situations where interchanges of shipments or diversions of shipments might be made. This was necessarily done as a predicate for the application of equitable tariffs. The circumstances, under which a shipper could receive from an initial carrier a shipment, were set out and provisions carefully made for the application of just tariffs.

Pursuant to such emergency order, and doubtless in anticipation of a similar order contemplated by the Director of Defense Transportation, the Director promulgated an order dated April 20, 1942, to become effective June 1, 1942. Such order was identified as "General Order O.D.T. No. 3," and its subject matter was defined by a headnote as "CONSERVATION OF MOTOR EQUIPMENT—COMMON CARRIERS OF PROPERTY."

The original order was amended April 8, 1943. The two emergency orders made by the Interstate Commerce Commission and the Director of Defense Transportation were necessarily complementary. No doubt they were formulated, after a conference, to meet an important emergency.

Unless the defendant is able to bring itself within the terms of these emergency orders or regulations, then, according to its own admission, it is guilty as charged in the information.

■ 3. The defendant has its headquarters in Dallas, Texas. In December, 1942, one of its drivers was in Kansas City

where a haul of household goods had been completed. Quite properly, and under instructions of the defendant's officers, the driver sought to utilize his facility for a return haul or a carriage to another point so as to avoid the necessity of returning with an empty motor vehicle.

The Lincoln Storage & Moving Company, located at Kansas City, Missouri, was approached by the driver. It was then indicated that he could be provided with a diversion haul from Kansas City to a point in California. It was represented that another carrier had intended to haul the merchandise, but, because of delay and difficulties, such merchandise could properly be diverted to the defendant. This was done. The merchandise was hauled according to tariff rates prescribed by the Interstate Commerce Commission, if, in fact, it was a diversion or interchange of traffic conformable to the emergency order. The facts would justify the conclusion that the driver, for his principal, at that time in good faith believed that he was conforming to the new regulations prescribed in the emergency orders mentioned. On that ground the guilt of the defendant was not established beyond a reasonable doubt and the defendant should be acquitted.

 Following this episode, the defendant made the additional hauls mentioned in the information pursuant to orders obtained for it by Lincoln Storage & Moving Company or some one in the employ of that company. There was scarcely a pretense in any of the other hauls that the business was diverted from or interchanged by some other carrier. The business was both received for and in behalf of the defendant and for the main part was solicited for its carriage. Admittedly, it did not apply its rate and without any doubt whatever there was a deliberate evasion of the law. ·It is true it did not have a written contract with either the Lincoln Storage & Moving Company at Kansas City or any individual acting for or on behalf of the defendant. The fact that it had failed to contract would not enable it to disavow the agency and especially where its solicitors were compensated for obtaining the business. The defendant clearly placed itself without the ambit of the purposes outlined in the emergency orders and unquestionably knew that. The defendant apparently took advantage of an opportunity opened up by the emergency orders and has endeavored to hide behind the fiction that such hauls were diversions or interchanges within the meaning of the emergency orders.

To permit a carrier thus to avoid the law upon such a pretext would nullify the tariff schedules filed by it and would create a chaotic condition in the motor vehicular freight traffic. In a situation such as confronted the Interstate Commerce Commission and the Director of Defense Transportation, this defendant and other carriers should have been alert to cooperate with, and not take advantage of, liberal and benevolent orders. The defendant is equally guilty on the last three counts of the information for the reason that it disregarded the regulations which required it to indicate the basis of its charges.

In view of the above I conceive it proper to ·find the defendant guilty of each and every count of the information, save only as to the first count. On that count a verdict of not guilty will be returned. The imposition of sentences will be deferred until the defendant can be notified of this decision and the verdicts, and until counsel on both sides have an opportunity to be present when sentences are imposed. At that time counsel are requested to present their suggested findings of fact and declarations of law.

I make the following Findings of Fact:

1. On counts 2 to 14 inclusive the defendant admits both the hauls that were made and that it exacted tariffs in excess of those duly filed and posted by it.

2. On said counts 2 to 14 inclusive the defendant received orders for shipment obtained by its solicitor at Kansas City, to whom it paid commissions, and in each and every instance it became and was the initial carrier, did not receive such shipments by diversion or by interchange, and charged rates in excess of those promulgated by it.

3. On counts 15 to 17 inclusive the defendant did not conform to the regulations of the Interstate Commerce Commission by specifying on its expense accounts and freight bills facts which would justify and explain its charges.

4. The defendant, on counts 2 to 14, inclusive, willfully and deliberately exacted a tariff in excess of its promulgated rate and did so on the pretext, knowingly false, that it was receiving for carriage household goods by diversion from or by interchange with other carriers.

5. The defendant has heretofore been convicted of an identical offense.

I state the following Conclusion of Law:

The defendant, having violated the law, is guilty as charged in each of the counts of the information designated as 2 to 17 inclusive.